UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ERIC JOSEPH MARSHALL, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 10-871 (RMC) |
| FEDERAL BUREAU OF INVESTIGATION, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Eric Joseph Marshall, who is incarcerated, seeks documents regarding DNA evidence relating to his criminal conviction. He brought this suit against the Federal Bureau of Investigation (FBI)[1] seeking records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a. The parties filed cross motions for summary judgment.[2] Because the FBI conducted an adequate search for records and disclosed all of the information available, subject to various exemptions, the FBI's motion for summary judgment will be granted and Mr. Marshall's cross motion will be denied.

---

[1] Because the FBI is a component of the Department of Justice ("DOJ") and it is the DOJ that is an agency covered by FOIA, DOJ is the proper party defendant in this case. *See* 5 U.S.C. § 552(f)(1).

[2] *See* Def.'s Mot. for Summ. J. ("Def.'s Mot.") [Dkt. # 23]; Pl.'s Resp. and Cross Mot. for Summ. J. ("Pl.'s Mot.") [Dkt. # 26]; Def.'s Reply in Support of Def.'s Mot. for Summ. J. and Resp. to Cross Mot. ("Def.'s Reply") [Dkt. # 25].

# I. FACTS

Mr. Marshall was convicted on October 26, 2005 of armed bank robbery, use and brandishing of a firearm during and in relation to a crime of violence, and being a convicted felon in possession of a firearm. Def.'s Mot., Ex. 1 ("Hardy Decl.")[3] ¶ 6. He is incarcerated in the Federal Correctional Institution in Pollock, Louisiana.

On November 18, 2008, Mr. Marshall submitted a FOIA/Privacy Act (PA) request to FBI Headquarters seeking a copy of his DNA report from the FBI laboratory in Quantico, Virginia and a copy of his DNA report from the DNA Diagnostic Center Laboratory in Fairfield, Ohio. Hardy Decl., Ex. A. On October 2, 2009, the FBI released, in part, a one page document; the document was redacted pursuant to FOIA Exemptions §§ 552(b)(6) and (7)(C).[4] Hardy Decl., Ex. I. Mr. Marshall appealed to the Department of Justice Office of Information Policy ("OIP"). The FBI located additional records, and the OIP remanded the matter for further processing. *Id.*, Ex. K.

Then, on February 9, 2010, Mr. Marshall made a specific request for the following

---

[3] The FBI submitted the Declaration of David Hardy, Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division. As Section Chief of RIDS, Mr. Hardy supervises the staff of 10 FBI Headquarters units and 2 field operational service centers who manage FOIA/PA requests for FBI records.

[4] The FBI also had relied a broad interpretation of Exemption 2, § 552(b)(2), in making its redactions. However, the FBI later withdrew this argument in light of *Milner v. Dep't of Navy*, No. 09-1163, 2011 WL 767699 (Mar. 7, 2011) (abrogating *Crooker v. Bur. of Alcohol, Tobacco & Firearms*, 670 F.2d 1051 (D.C. Cir. 1981)). *See* Def.'s Notice [Dkt. # 30]. In *Milner*, the Supreme Court held that § 552(b)(2) exempts from disclosure information relating to the internal rules and practices of an agency — i.e., rules and practices regarding conditions of employment such as hiring and firing, work rules and discipline, and compensation and benefits. The Court rejected the broad interpretation of Exemption 2, called "High 2," that had been embraced by other courts.

DNA reports (including the Polymerase Chain Reaction ("PCR")[5] report and the Short Tandem Repeat ("STR") Report:[6] 1) a report dated July 24, 2003, prepared by the FBI; 2) a report dated October 22, 2003, prepared by the FBI; and 3) a report dated March 25, 2004, prepared by the DNA Diagnostics Center. *Id.*, Ex. L. On April 26, 2010, the FBI released, in part, ten pages of documents, redacted pursuant to FOIA Exemptions §§ 552(b)(2), (6), and (7)(C). *See* Hardy Decl. ¶ 34 & Ex. O (FBI's release of reports dated July 24, 2003; Oct. 22, 2003; and Dec.2, 2003).

Mr. Marshall filed this suit, alleging that the FBI did not adequately respond to his request for "complete copies of his DNA reports." *See* Compl. [Dkt. # 1] at 1. Specifically, he asks the Court to order the FBI to provide all DNA reports and related documents dated July 24, 2003 and October 22, 2003. *Id.* at 3.

Subsequently, on September 2, 2010, the FBI released two additional pages, withholding the pages in part under Privacy Act Exemption (j)(2) and FOIA Exemption § 552(b)(2). Hardy Decl., Ex. S. This release included a black and white copy of an electropherogram[7] dated July 11, 2003. On September 8, 2010, the FBI released two more pages — a color copy of the same

---

[5] PCR is a "technique used in molecular genetics that permits the analysis of any short sequence of DNA (or RNA) even in samples containing only minute quantities of DNA or RNA. PCR is used to reproduce (amplify) selected sections of DNA or RNA for analysis." *See* http://www.medterms.com (last visited Aug. 5, 2011).

[6] A "Short Tandem Repeat" report is a record of repetitive DNA within the genome, consisting of multiple, end-to-end copies of a short DNA sequence usually comprised of di-, tri-, or tetranucleotide repeat units. *See* http://de.dict.md (last visited Aug. 5, 2011).

[7] An "electropherogram" is a record of the separated components of a mixture, where the components have been separated by electrophoresis. *See* http://dictionary.reference.com (last visited on Aug. 5, 2011). "Electrophoresis" is a technique for separating the components of a mixture of charged molecules, such as fragments of DNA, in an electric field. *See* http://thefreedictionary.com (last visited Aug. 5, 2011). An electropherogram may be used for deriving results of DNA sequencing.

electropherogram. *Id*., Ex. T. On February 7, 2011, the FBI released a copy of an electropherogram dated September 25, 2003. *See* Def.'s Notice [Dkt. # 29].

In sum, the FBI released fifteen pages, two in whole and the thirteen in part. *See* Hardy Decl. ¶ 4 & Exs. I, O, S, & T. The only information redacted from the documents was the telephone numbers and fax numbers of FBI personnel and names and identifying information of FBI Special Agents, FBI personnel, and third parties of investigative interest. *Id*. ¶ 40. After the Hardy Declaration was prepared, the FBI also released in full the electropherogram dated September 25, 2003. *See* Def.'s Notice [Dkt. # 29]. The FBI found no records pertaining to a March 25, 2004 DNA report prepared by DNA Diagnostics Center.

Mr. Marshall admits that the FBI responded to his FOIA request by producing certain PCR and STR reports and electropherograms. *See* Pl.'s Mot. at 4. He contends, however, that he requested more information that was not produced. He seeks "Laboratory Number 030903021 PF NR Date October 22, 2003 PCR/STR reports for [e]lectropherogram of computer specimen simulations Q2, Q68, and Q69." *Id*. The FBI contends that because it conducted an adequate search and produced documents that were properly redacted pursuant to valid FOIA Exemptions, summary judgment should be granted in its favor.

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Moreover, summary judgment is properly granted against

a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp. 477, 481 n.13 (D.D.C. 1980).

### III. ANALYSIS

FOIA requires agencies of the federal government to release records to the public upon request, unless one of nine statutory exemptions applies. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975); 5 U.S.C. § 552(b). To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records. *United States Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 142 (1989). Even though FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those legitimate governmental and private interests that might be harmed by release of certain types of information." *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (internal quotation marks omitted). An agency seeking to withhold information must identify the reasons why a particular exemption is relevant. *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987).

#### A. Adequacy of the Search and Vaughn Index

The adequacy of a search is measured by a standard of reasonableness and depends

on the individual circumstances of each case. *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990). The question is not whether other responsive documents may exist, but whether the search itself was adequate. *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994). Before it can obtain summary judgment in a FOIA case, "an agency must show, viewing the facts in the light most favorable to the requester, that . . . [it] has conducted a search reasonably calculated to uncover all relevant documents." *Id.* There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information. *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). An agency is not required to undertake a search that is so broad as to be unduly burdensome. *Nation Magazine v. U.S. Customs Serv.,* 71 F.3d 885, 890 (D.C. Cir. 2003).

To establish that an adequate search was conducted, proper exemptions were claimed, and reasonably segregable records were released, agencies regularly submit an affidavit in support of their motions for summary judgment. *Judicial Watch v. Dep't of Health and Human Servs.*, 27 F. Supp. 2d 240, 242 (D.D.C. 2002). Agency affidavits are deemed sufficient if they show, with reasonable specificity, why the documents or redactions fall within an exemption. *Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979). A court may award summary judgment solely on the basis of information provided by agency declarations if the declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of

other documents." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation omitted).

The agency's affidavit is often accompanied by or includes a *Vaughn* index. The D.C. Circuit's decision in *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), requires agencies to prepare an itemized index correlating each withheld document, or portion thereof, with a specific FOIA exemption and the agency's nondisclosure justification. The materials can be presented in any form so long as they provide the court a reasonable basis to evaluate the exemption claims. *Delaney, Midgail & Young, Chartered v. IRS*, 826 F.2d 124, 128 (D.C. Cir. 1987). Once an agency has provided adequate affidavits, the burden shifts back to the plaintiff to demonstrate a lack of a good faith search. *Maynard v. CIA*, 986 F.2d 547, 560 (1st Cir. 1993).

The Hardy Declaration indicates that the FBI conducted a good faith, reasonable search of those systems of records likely to possess the requested information. The FBI first searched the Central Records System ("CRS") for main files and cross-reference files at FBI Headquarters and field offices. Hardy Decl. ¶¶ 31, 33. CRS is the FBI's electronic repository for information compiled for law enforcement purposes. *Id*. ¶ 25. CRS is accessed through the Automated Case Support System ("ACS") and the General Indices. *Id*. ¶¶ 25-30. The FBI searched for records in CRS using various versions of Mr. Marshall's name, including "Eric Joseph Marshall," "E. Marshall," or "E.J. Marshall. *Id*. ¶ 31 n.3. The FBI also used Mr. Marshall's date of birth and social security number to identify responsive records. *Id.*

Because Mr. Marshall specifically requested DNA records, on December 17, 2008 the FBI also asked the FBI Federal Convicted Offender Program ("FCO Program") to search for records. *Id*. ¶ 32. The FCO Program develops DNA profiles from known samples submitted by

federal convicted offenders. These profiles are entered into the National DNA Index System. *Id*. ¶ 32 n.4. The FCO Program did not locate a DNA profile for Mr. Marshall, probably because his sample had been taken just five days before the record request was made. *Id*. ¶ 32. The FBI also verified with its Nuclear DNA Unit that the reports it released to Mr. Marshall reflected the only DNA testing conducted by the FBI relating to Mr. Marshall. *Id*. ¶ 35.

As explained above, the adequacy of the FBI's search is measured by a standard of reasonableness and depends on the individual circumstances of the case. *Truitt*, 897 F.2d at 542. It must be emphasized that the issue is not whether other responsive documents may exist, but whether the search itself was adequate. *Steinberg*, 23 F.3d at 551. Here the FBI conducted a good faith, reasonable search of records likely to possess the requested information. *See Oglesby*, 920 F.2d at 68. Because the FBI provided an adequate affidavit indicating a reasonable search for records, the burden shifts back to Mr. Marshall to demonstrate the lack of a good faith search. *See Maynard*, 986 F.2d at 560. Mr. Marshall has not met his burden because he has cited no contrary evidence and has not presented any evidence of bad faith. Mere speculation regarding the existence and discoverability of other documents is insufficient to rebut Mr. Hardy's good faith declaration. *See SafeCard*, 926 F.2d at 1200.

Further, the Hardy Declaration includes a proper *Vaughn* Index. It describes the 15 pages of responsive documents released — two in whole, the remainder in part. *See* Hardy Decl. ¶ 4; *id*., Exs. I, O, S, & T.[8] It explains that the documents were redacted pursuant to Exemptions (6) and (7)(C) — that is, the following information was removed from the documents prior to their release:

---

[8] As explained above, after the Hardy Declaration was filed, the FBI also released in whole an electropherogram dated September 25, 2003. *See* Def.'s Notice [Dkt. # 29].

(1) the telephone numbers and fax numbers of FBI personnel and (2) the names and identifying information of FBI Special Agents, FBI personnel, and third parties of investigative interest. *Id*. ¶ 40.

### B. Privacy Act Exemption (j)(2)

Subsection (j)(2) of the Privacy Act exempts from disclosure records maintained by an agency whose principal function is law enforcement. 5 U.S.C. § 552a(j)(2). The Privacy Act permits an agency to promulgate regulations exempting from disclosure:

> records maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consist of . . . . (B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or (C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision.

*Id*. CRS records are exempt from disclosure under the Privacy Act. 28 C.F.R. § 16.96. Thus, the Privacy Act does not require that the FBI release any of the records kept in CRS. Even though the Privacy Act does not require disclosure, the FBI processed Mr. Marshall's request under FOIA. *See Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987) (to withhold documents from a FOIA/PA request, an agency must show that the documents are exempt from disclosure under each Act).

### C. FOIA Exemptions 6 and 7(C)

Invoking FOIA Exemption 6 in conjunction with Exemption 7(C), the FBI redacted information likely to identify the following categories of individuals: FBI special agents, FBI

personnel, and third parties of investigative interest. Hardy Decl. ¶¶ 40, 43-49.

Exemption 6 permits an agency to withhold from disclosure "personnel and medical files and similar files" if their disclosure would "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(6). Exemption 7(C) exempts disclosure of information based on privacy concerns by permitting an agency to withhold from disclosure information that is "compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 522(b)(7)(C) (emphasis added). If a court determines that information properly was properly withheld under one exemption, it need not determine whether another exemption applies to that same information. *Simon v. Dep't of Justice*, 980 F.2d 782, 784-85 (D.C. Cir. 1992). Thus, in this case the Court only needs to analyze Exemption 7(C).

Exemption 7(C) protects the identities of suspects, witnesses, and other persons of investigatory interest who are identified in agency records in connection with alleged criminal activity. *Computer Prof'ls for Soc. Responsibility v. Secret Service*, 72 F.3d 897, 904 (D.C. Cir. 1996). Further, law enforcement personnel have a privacy interest in protecting their own identities because disclosure could subject them to annoyance, embarrassment, and harassment in the conduct of their official and private lives. *Halpern v. FBI*, 181 F.3d 279, 296-97 (2d Cir. 1999); *Lesar v. DOJ*, 636 F.2d 472, 487 (D.C. Cir. 1980). Accordingly, the FBI withheld the telephone numbers and fax numbers of FBI personnel, because these phone numbers could be used to identify them. Further, the FBI withheld the names and identifying information of FBI Special Agents, FBI personnel, and third parties of investigative interest. Release of this information would by its nature reveal the identity of these individuals.

Once a privacy interest has been established, it must be balanced against the public interest, if any, that would be served by disclosure of the information. *Albuquerque Publ'g Co. v. Dep't of Justice*, 726 F. Supp. 851, 855 (D.D.C. 1989). The only relevant public interest for purposes of Exemption 7(C) is that of shedding light on the agency's performance of its statutory duties. *Davis v. Dep't of Justice*, 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). To obtain disclosure of private information, a FOIA requester must at a minimum "produce evidence that would warrant a belief by a reasonable person that the alleged Government impropriety might have occurred." *Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 174 (2004); *see also Blackwell v. FBI*, No. 10-5072, 2011 WL 2600831, at * 3 (D.C. Cir. 2011). Otherwise, the balancing requirement simply does not come into play. *Id*. at 175. "Unsubstantiated assertions of government wrongdoing . . . do not establish a meaningful evidentiary showing." *Boyd v. Criminal Div. of the Dep't of Justice*, 475 F.3d 381, 388 (D.C. Cir. 2007) (citing *Favish*, 541 U.S. at 175) (internal quotation marks omitted).

Mr. Marshall has not produced any evidence that would give rise to a reasonable belief that any government impropriety might have occurred. Accordingly, the Court need not engage balancing. Because the FBI has established a valid privacy interest and there is no evidence of any government impropriety, the documents were properly redacted pursuant to Exemption 7(C).

### D. Segregability

A district court in a FOIA case has "an affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). This directive stems from the requirement under 5 U.S.C. § 552(b) that any "reasonably segregable" information must be disclosed — that is, information that can be separated

from the rest of a document — even if the document is otherwise exempt from disclosure, unless the exempt and non-exempt portions are "inextricably intertwined with exempt portions." *Id.*; *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). An agency must provide a "detailed justification" and not just "conclusory statements" to demonstrate that it has released all reasonably segregable information. *Mead Data*, 566 F.2d at 261. The government must show with reasonable specificity why a document cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Here, the Hardy Declaration indicates that the FBI only redacted names, telephone numbers, and other information that could be used to identify FBI agents and personnel and third parties. Hardy Decl. ¶¶ 43-50. The FBI released all other information responsive to Mr. Marshall's FOIA request. *Id*. Thus, the FBI met its burden of showing with reasonable specificity why documents could not be further segregated.

**E. Judicial Notice**

Mr. Marshall asks the Court to take judicial notice of an Order issued by the Eastern District of Louisiana on March 28, 2007 in the underlying criminal case against Mr. Marshall, *U.S. v. Marshall*, No. 03-0157 (E.D. La.). *See* Pl.'s Motion for Judicial Notice [Dkt. # 17]. The Order notes that unspecified "DNA reports" were provided to Mr. Marshall. Mr. Marshall asserts that he did not receive complete copies of all of the DNA reports relating to him[9] and that this Order demonstrates that he is entitled to copies of these documents under Federal Rule of Criminal Procedure 16.

---

[9] Mr. Marshall alleges that he only received the "cover page" because that was the only information possessed by the U.S. Attorney's Office in the Eastern District of Louisiana. Compl. at 1.

The FBI does not oppose the Court's taking judicial notice of this Order, and the Court will grant the motion for judicial notice. However, the Order is not relevant to this proceeding because disclosure obligations under FOIA and disclosure obligations in criminal proceedings are separate matters, governed by different standards. The Federal Rules of Criminal Procedure and FOIA provide "two independent schemes for obtaining information," and FOIA was not intended as a "device . . . to enlarge the scope of discovery beyond that already provided by the Federal Rules of Criminal Procedure." *North v. Walsh*, 881 F.2d 1088, 1094 (D.C. Cir. 1989) (citing *United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977)); *see also United States v. U.S. Dist. Court*, 717 F.2d 478, 480 (9th Cir. 1983) (distinguishing document production under Rule 16 from document release under FOIA).

The D.C. Circuit similarly explained that FOIA and *Brady*[10] disclosure requirements are not coextensive in *Boyd v. Criminal Div. of the Dep't of Justice*, 475 F.3d 381, 390 (D.C. Cir. 2007). *Id*. The *Boyd* court held that the Justice Department's withholding of records under FOIA Exemption 7(D), 5 U.S.C. § 552(b)(7)(D), was appropriate under FOIA law, even though the requester believed that the material should have been disclosed under *Brady*. *See also Mingo v. Dep't of Justice*, No. 08-2191(CKK), 2009 WL 2618129, at *2 (D.D.C. Aug. 24, 2009) ("*Brady* does not foreclose the government from asserting FOIA exemptions even as to information that may have been previously disclosed to a defendant in a criminal proceeding.") The court further noted that to vindicate a right under *Brady*, the requester could collaterally attack his conviction under 28 U.S.C. § 2255. *Id*. A "[p]laintiff may not trump the agencies' invocation of the FOIA exemptions by arguing that the exempted information should be provided as exculpatory evidence. His arguments

---

[10] *Brady v. Maryland*, 383 U.S. 83 (1963).

based on *Brady v. Maryland* and its progeny should be raised in a collateral proceeding challenging his conviction." *Cucci v. DEA*, 871 F. Supp. 508, 514 (D.D.C. 1994).

Accordingly, the Order in the criminal case against Mr. Marshall noting that "DNA records" were released to Mr. Marshall does not mandate the release of documents in this case. This case is governed by FOIA law and not Rule 16, *Brady*, or other rules of criminal procedure. Further, under FOIA, the FBI conducted a reasonable and adequate search for records responsive to Mr. Marshall's FOIA request, and it released all non-exempt information.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judicial notice [Dkt. # 17] will be granted; Defendant's motion for summary judgment [Dkt. # 23] will be granted; and Mr. Marshall's cross motion for summary judgment [Dkt. # 26] will be denied. A memorializing Order accompanies this Memorandum Opinion.


Date: August 10, 2011
/s/
ROSEMARY M. COLLYER
United States District Judge